UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE LYNN N.<br><br>    Plaintiff,<br><br>v.<br><br>LELAND DUDEK, ACTING COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>    Defendant. | Case No.: 24-cv-480-DDL<br><br>**ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

Plaintiff Michelle Lynn N. ("Plaintiff") appeals the Commissioner's denial of her application for supplemental security income pursuant to 42 U.S.C. § 405(g). For the reasons stated below, the Court concludes the Commissioner's decision is not erroneous and is supported by substantial evidence and is therefore **AFFIRMED**.

///

///

---

[1] Leland Dudek is automatically substituted for Martin O'Malley pursuant to Federal Rule of Civil Procedure 25(d).

# I.

# **BACKGROUND**

## A. Plaintiff's Application for Disability Benefits

On November 26, 2018, Plaintiff applied for supplemental security income under Title XVI of the Social Security Act (the "Act"). *See* Certified Administrative Record ("AR") [Dkt. No. 11] at 95, 109.[2] Plaintiff alleged she had been unable to work since November 26, 2018, due to "mental problems" and "knee problems."[3] *Id*. at 95-96, 109. After her application was denied at the initial stage and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id.* at 137. Plaintiff appeared with counsel and testified at a hearing on September 13, 2022 (the "2022 Hearing"), following which the record remained open for further development. *Id.* at 33-67. Plaintiff's counsel requested a supplemental hearing which was held on July 11, 2023 (the "2023 Hearing"). *Id.* at 68-94. The ALJ issued an unfavorable decision on September 11, 2023, having concluded Plaintiff "has not been under a disability, as defined in [the Act], since the date the application was filed." *Id*. at 14-27. On January 9, 2024, the Appeals Council denied review, and the ALJ's decision became final. *See id*. at 1-6. This appeal timely followed.

## B. Summary of ALJ's Findings

A person is considered "disabled" within the meaning of the Act if they suffer from a medically determinable physical or mental impairment which is expected to last at least a year and is of such severity that they cannot work, considering their age, education, and work experience. *See* 42 U.S.C. § 423(d). The

---

[2]  The Court uses the parties' pagination of the AR. All other docket citations are to the CM/ECF page numbers.

[3]  Plaintiff initially alleged an onset date of October 1, 2015, but later amended it to the date her application was filed. *See* AR at 35.

ALJ followed the sequential five-step evaluation set forth in the regulations in adjudicating Plaintiff's disability claim.[4] *See generally* AR at 14-27.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 26, 2018, the date of her application and her alleged onset date. *Id*. at 19.

At step two, the ALJ found Plaintiff had the following severe impairments: osteoarthritis of the knees, obesity, and degenerative joint disease of the right knee. *Id*. The ALJ found Plaintiff's other alleged physical impairments were not severe.[5] *Id*. at 19-20. The ALJ also considered Plaintiff's allegations of disabling anxiety, depression, and post-traumatic stress disorder, but determined these mental impairments were not severe. *Id.* at 20. In making this finding, the ALJ assessed Plaintiff's functioning in the four "Paragraph B" categories.[6] Based on the

---

[4] The ALJ must determine the following: at step one, whether the claimant is engaged in substantial gainful activity; at step two, whether the claimant suffers from a severe impairment within the meaning of the regulations; at step three, whether the impairment meets or is medically equal to an impairment identified in the Listing of Impairments; at step four, the claimant's residual functional capacity ("RFC") based on all impairments and whether the claimant can perform their past relevant work; at step five, whether the claimant can make an adjustment to other work. If the claimant is found not disabled at any step, the analysis does not proceed to the next step. *See* 20 C.F.R. § 416.920.

[5] These included mild focal sensory neuropathy of left median nerve at the wrist, tobacco abuse, methamphetamine abuse, chronic obstructive pulmonary disease, asthma, obstructive sleep apnea, chronic pain, restless leg syndrome, gastroesophageal reflux disease, and mild carpal tunnel syndrome. Plaintiff does not challenge the ALJ's conclusion that these conditions were not severe.

[6] In addition to the five-step sequential evaluation, where a claimant alleges a mental impairment, the ALJ must also rate the claimant's degree of limitation in four functional areas (understand, remember, or apply information; interact with

evidence in the record, the ALJ determined Plaintiff had a mild limitation in understanding, remembering or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting or maintaining pace; and a mild limitation in adapting or managing herself. *See Id*. Because Plaintiff's medically determinable mental impairments caused "no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities," the ALJ concluded these impairments were "nonsevere." *Id.* at 20-21.

At step three, the ALJ found Plaintiff's impairments did not meet or medically equal a listed impairment. *Id*. at 21-22.

The ALJ then determined Plaintiff:

> Has the residual functional capacity to perform light work as defined in 20 C.F.R. [§] 416.967(b) except [she] can stand without interruption for 15 minutes; she can walk without interruption for five minutes; she can stand for two hours out of an eight-hour workday; she can walk for two hours out of an eight-hour workday; and she can sit for four hours without interruption and six hours out of an eight-hour workday. She can occasionally climb ramps and stairs but no climbing ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; frequent pushing and pulling with the right hand; occasionally work at unprotected heights and moving mechanical parts; occasionally operate motor vehicles; frequent exposure to humidity and wetness; frequent exposure to dusts, gasses and

---

others; concentrate, persist, or maintain pace; and adapt or manage oneself), using a five-point scale (none, mild, moderate, marked, and extreme). *See* 20 C.F.R. § 416.920a. This analysis is interchangeably referred to as the "Paragraph B" analysis, the Psychiatric Review Technique, or the PRT.

pulmonary irritants; occasional exposure to extreme heat and cold; frequent exposure to vibration and can tolerate loud noises.

AR at 22.

The ALJ considered Plaintiff's subjective testimony regarding her limitations in formulating the RFC. *Id.* at 22-24. Having reviewed the evidence, including Plaintiff's testimony at the 2022 and 2023 administrative hearings, the ALJ found although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's allegations regarding the intensity, persistence and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 23. The ALJ also considered third-party function reports to the extent those reports were consistent with the "overall medical evidence of record." *Id.* at 25.

The ALJ also reviewed the medical opinions and prior administrative medical findings in the record. AR at 24-25. The ALJ found the opinions of two state agency medical consultants and a consultative examiner, all limiting Plaintiff to light work, were persuasive because they were supported by objective findings and consistent with the medical evidence as a whole. *Id.* at 24. The ALJ found Plaintiff's treating osteopath's opinion that Plaintiff was "limited to less than sedentary work," "incapable of even low stress work," and would need to be off task or absent a significant amount of time unpersuasive. *Id.* at 25. The ALJ noted the treating osteopath's opinions were not supported by treatment notes or other objective findings, and inconsistent with other objective medical evidence. *Id.*

At step four, the ALJ found Plaintiff had no past relevant work. AR at 25. At step five, the ALJ determined an individual of Plaintiff's age, education, work experience, and RFC would be able to perform jobs which exist in significant numbers in the national economy. *Id.* at 26. Accordingly, the ALJ concluded Plaintiff was "not disabled" within the meaning of the Act. *Id.* at 27.

///

## II.
## ISSUES PRESENTED

Plaintiff raises two issues on appeal:

1) Whether the ALJ harmfully erred by failing to identify and resolve an apparent conflict between the DOT and vocational expert testimony; and

2) Whether the ALJ harmfully erred by finding Plaintiff's medically determinable mental impairments non-severe at Step Two of the sequential analysis.

*See* Plaintiff's Opening Brief ("Op. Br."), Dkt. No. 18, at 6.

## III.
## STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023).[7] The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Id*. "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id*. This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id*. Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id*. If the evidence is susceptible of more than one rational interpretation, the Court must

---

[7] Unless otherwise noted, all citations, subsequent history, and parallel reporter citations are omitted; in direct quotes, all internal quotation marks, brackets, ellipses and footnotes are omitted, and all emphasis is added.

uphold the ALJ's decision. *See id.* at 1115-16. However, the Court cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

## IV.

## DISCUSSION

With the foregoing legal standards in mind, the Court addresses each of the disputed issues Plaintiff has identified.

**A. Plaintiff Has Not Established a Harmful Step Five Error**

As a first charge of reversible error, Plaintiff asserts the ALJ "harmfully erred by relying on the [vocational expert's] contradictory testimony to support a finding of non-disability at Step Five . . .." Op. Br. at 10.

"An ALJ often calls upon a vocational expert to testify about what jobs, if any, a hypothetical person with specified limitations may perform." *Leach v. Kijakazi*, 70 F.4th 1251, 1254 (9th Cir. 2023). "Typically, the ALJ questions the vocational expert by describing a hypothetical person with the claimant's limitations." *Conway v. O'Malley*, 96 F.4th 1275, 1278 (9th Cir. 2024). "If the ALJ reaches the final step of the five-step process, the ALJ may rely—as the ALJ did here—on the vocational expert's testimony." *Leach*, 70 F. 4th at 1254. For such reliance to be proper, however, any hypothetical posed to the vocational expert must accurately describe the claimant's limitations, and the ALJ must resolve any obvious conflict in the vocational expert's testimony. *See id.* at 1255.

Plaintiff further argues the ALJ "put forth the same sedentary hypothetical twice to the [vocational expert]," but the vocational expert gave inconsistent responses to the purportedly identical hypotheticals, and the ALJ then "failed to identify and resolve" the apparent conflict. *Id.* at 11-12.  Plaintiff's challenge relates to the ALJ's exchange with the vocational expert during the 2023 Hearing. *See* AR at 88-91.  It began:

> **ALJ**: . . . Let's assume a hypothetical individual of the claimant's age, education with the past work as described.  So, no past work.  Let's further assume this individual can lift and carry, push, pull 20 pounds occasionally and 10 pounds frequently.
>
> This claimant can sit for four hours without interruption.  She can sit for six hours out of an eight-hour workday.[8]
>
> * * *
>
> This claimant can stand without interruption for 15 minutes. She can walk without interruption for five minutes.  *She can stand for two hours out of an eight-hour work day.  She can walk for two hours out of an eight-hour work day.  This person can sit for four hours without interruption.*  She can sit for six hours out of an eight-hour workday.[9]
>
> * * *
>
> With this particular hypothetical, can our hypothetical person perform any other work?
>
> **VE**: Yes.

*Id.* at 84-85 (emphasis added).

---

[8]   At this point the ALJ indicated he was reading from the consultative examiner's report (*see* AR at 1399-1405) and engaged in discussion with Plaintiff's counsel about where to locate the recommended limitations within the report.

[9]   The ALJ proceeded to describe other postural, manipulative and environmental limitations which are not at issue in this appeal.

The vocational expert described jobs that existed in the national economy that could be performed by a person with the ALJ's hypothetical limitations. AR at 85-86. The vocational expert clarified they would "erode" the number of available positions by half "due to the limitations in regard to sit/stand/walk." *See id.* Notwithstanding this discount, however, the vocational expert testified the hypothetical claimant could work as an assembler (36,000 jobs nationally and before erosion), marker (137,000 jobs), or solderer (29,000 jobs). *Id.*

The exchange continued:

**ALJ**: All right. And, if I changed standing and walking in an eight hour day . . . *[l]et's change standing and walking to two hours. And, does that bring it down to sedentary work* or, or not?

**VE**: *Yes. If they stand to two hours. Yes. It would bring it down to sedentary*.

**ALJ**: All right. So, give me some sedentary examples.

**VE**: Yeah. So, one example would be a document preparer . . . Nationally, there would be approximately 15,000 jobs . . . A second example would be addresser . . . Nationally there would [be] approximately 3,000 jobs . . . A third example would be final assembler . . . Nationally, there would be approximately 2,900 jobs.

*Id.* at 86-87 (emphasis added).

The ALJ then added mental and social limitations to his hypothetical, limiting the hypothetical claimant to low stress work consisting of simple instructions and tasks and with minimal contact with the public. AR at 88-89. The vocational expert testified, "the jobs I provided for the prior hypotheticals would all still apply" and "it would not change the numbers." *Id.* at 89. In response to the ALJ's question, the vocational expert confirmed if the hypothetical claimant were off-task 15 percent of the day or more, it would "preclude all work." *Id.* Plaintiff's attorney then asked "*If [a claimant] is below sedentary, sit/stand/walk*

*for less than two hours out of an eight-hour workday* . . . could they perform any work?" *Id.* at 90-01 (emphasis added). The vocational expert responded in that hypothetical, the claimant would be precluded from all work. *Id.* at 91.

Plaintiff asserts the two hypotheticals posed by the ALJ were identical, because the ALJ did not "change" the standing and walking limitation from the first hypothetical to the second. Op. Br. at 12. Plaintiff further asserts neither the ALJ nor the vocational expert "apparently realiz[ed] the ALJ had put forth the same standing and walking limitation in hypotheticals 1 and 2," and the ALJ erred by failing to resolve the apparently conflicting answers from vocational expert, who identified light-work positions in response to the first hypothetical, but confirmed that the second hypothetical would be classified as sedentary. *Id.*

Although the ALJ's two hypotheticals might appear identical on a superficial reading, close scrutiny does not support Plaintiff's interpretation of the record. The Court agrees with the Commissioner that, viewed in the context of the entire exchange and with reference to the medical opinions in the record and Social Security Ruling 83-10, the ALJ and Plaintiff's counsel posed a series of hypotheticals ranging from modified light work to "below sedentary," to which the vocational expert responded without inconsistency. *See* Commissioner's Brief ("Comm'r Br."), Dkt. No. 19, at 5.

The Administration defines sedentary work as work that requires walking and standing only "occasionally." *See Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251 (S.S.A. 1983) (hereafter "SSR 83-10"). "[A]t the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Id.* "[T]he full range of light work," in contrast, "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," with the remaining time spent sitting. As the Administration explains,

1  "the primary difference between sedentary and most light jobs" is the maximum
2  amount of time spent standing or walking.  *Id.*
3        During the 2023 Hearing, the ALJ first posed a hypothetical to the vocational
4  expert describing a claimant who could sit for up to two hours and stand for up to
5  two hours, for a total of *four* hours.  AR at 84-85.  This hypothetical mirrors the
6  report by the consultative examiner, who stated: "[Plaintiff] can stand for two
7  hours out of an eight-hour workday.  She can walk for two hours out of an eight-
8  hour workday."  *See id.* at 1404.  And, as the Commissioner correctly points out,
9  "this hypothetical was representative of a reduced range of light work."  Comm'r
10 Br. at 5.  The second hypothetical reduced the combined time spent standing and
11 walking to *two* hours.  *Id.* at 86.  Consistent with the foregoing definitions, the ALJ
12 confirmed this change would "bring it down to sedentary."  *Id.*  Plaintiff's counsel
13 then posed a final question regarding the availability of work accurately described
14 as "below sedentary," based on Plaintiff's treating osteopath's opinion that
15 Plaintiff could walk no more than one city block, sit for no more than five minutes,
16 and stand for no more than five minutes.  *See id.* at 90 (referencing "17F," Dr.
17 Corman's medical opinion (*see* AR at 1406-10)).  In response to these hypotheticals,
18 the vocational expert identified light-work and sedentary positions, and
19 confirmed there would be no work below the sedentary level, respectively.  *Id.* at
20 84-90.  Viewed in this context, the Court agrees with the Commissioner that there
21 was "no conflict" in the vocational expert's responses to the ALJ's first and second
22 hypotheticals, "because the jobs were derived from two different standing and
23 walking limitations."  Comm'r Br. at 6.
24       Plaintiff's further arguments that the ALJ erred at step five proceed from her
25 misapprehension of the hearing transcript, and fail for the same reasons described
26 above.  For example, Plaintiff asserts the ALJ erred by identifying "light" jobs
27 available in the national economy "to base a finding of non-disability" despite the
28 ALJ's "concession" she is only capable of sedentary work.  *See* Op. Br. at 12.  But

Plaintiff's assertion that ALJ's RFC limits her to "two hours standing and walking" in an eight-hour workday – *i.e.*, to sedentary work – is directly contradicted by the record. *See id*. The ALJ's opinion plainly states Plaintiff "can stand for two hours out of an eight-hour workday; [and] she can walk for two hours out of an eight-hour workday." *See* AR at 22. The limitation to four combined hours of standing and walking renders Plaintiff capable of a reduced range of light work, as reflected in the ALJ's decision. *See* SSR 83-10. Likewise, Plaintiff's argument that the sedentary jobs identified by the vocational expert were either obsolete or do not exist in significant numbers nationwide fails to show harmful error (even if true), because Plaintiff was not limited to sedentary work per the ALJ's RFC determination. *See* Op. Br. at 13-14.

Aside from incorrectly deeming the ALJ's two hypotheticals "identical," Plaintiff does not otherwise argue the ALJ "materially mischaracterized" her functional capacity, nor does she identify any other "obvious" conflict in the vocational expert's testimony. *See Leach*, 70 F.4th at 1254-55. Absent such a showing, the ALJ was entitled to rely on the vocational expert's testimony. *Id.*

For the foregoing reasons, the Court finds Plaintiff has not carried her burden to demonstrate harmful error with respect to the ALJ's analysis at step five.

**B. Plaintiff Has Not Established a Harmful Step Two Error**

As a second charge of reversible error, Plaintiff asserts the ALJ "harmfully erred" by "failing" to find Plaintiff's mental impairments severe at step two, "or accounting for the limitations of these [impairments] in the RFC beyond Step Two of the sequential evaluation." Op. Br. at 15.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(a)(4). The Ninth Circuit has emphasized that "[a]n impairment or combination of impairments may be found not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an

individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original). In evaluating a claimant's mental impairments, the ALJ rates the claimant's degree of limitation in the following four broad functional areas, also known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.920a(c)(2)-(3). If the ALJ rates a claimant's degrees of limitation as "none" or "mild," the ALJ will generally conclude the claimant's mental impairment is not severe. *Id.* § 416.920a(d)(1).

As an initial matter, any alleged error by the ALJ in classifying Plaintiff's mental impairments as non-severe cannot be a basis for reversal because the ALJ resolved step two in Plaintiff's favor. Because the ALJ found Plaintiff had **some** severe impairments, the classification of Plaintiff's mental impairments as non-severe could not have prejudiced her. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (because step two was decided in the claimant's favor, he "could not possibly have been prejudiced"); *see also Loader v. Berryhill*, 722 F. App'x 653, 654-55 (9th Cir. 2018) (where the claimant prevailed at step two, and his case proceeded on the basis of "other" severe impairments, "it made no difference for the ALJ's ensuing analysis whether his medically determinable depression was previously considered severe"). Rather, the dispositive question is whether the ALJ's ensuing analysis, particularly the RFC assessment, accurately reflected Plaintiff's limitations based on all the relevant evidence in the record.

On this question, Plaintiff asserts "[r]egardless of the determination of 'severity' at step Two, the as the ALJ [*sic*] found anxiety, depression and PTSD to be MDI, the ALJ was required to account for them beyond step [t]wo and three of the decision and harmfully erred by failing to do so." Op. Br. at 24. Plaintiff further charges the ALJ "cherry picked" benign findings from a single mental status examination and failed to address a "bevy" of conflicting evidence "outside

of the discussion of the [Paragraph] 'B' criteria." *Id.* at 17, 19, 23-24. Again, the Court disagrees.

The Commissioner is correct that consideration of whether an impairment is "'severe' . . . is concerned with whether the condition significantly limits a claimant's ability to perform basic work activities." Comm'r Br. at 7. For reasons discussed at length in the decision, the ALJ determined Plaintiff's mental impairments did not significantly limit her ability to perform work activities. AR at 20-21. The ALJ therefore reasonably determined Plaintiff's mental impairments were not severe. *See* 20 C.F.R. § 416.920a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment[] is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."); *see also O'Neal v. Astrue*, No. CIV. 09-722-AA, 2010 WL 4386937, at *3 (D. Or. Oct. 29, 2010) ("The SSA regulations and the Ninth Circuit hold[] that mild psychological impairments are appropriately considered nonsevere.") (citing *Saelee v. Chater,* 94 F.3d 520, 522 (9th Cir.1996) and 20 C.F.R. § 404.1520a(d)(1)).

The Court is not persuaded that the ALJ "failed to explain" how he reached this conclusion, or that he did so based on "cherry-picked" evidence. Op. Br. at 16-17. In conducting the Paragraph B analysis, the ALJ cited six exhibits consisting of extensive medical records, including 22 mental status examination reports dating from 2015 through 2023, in addition to various psychological finding during other medical visits.[10] *See id.* at 20 (citing Exhibits 1-4F, 15F and 18F). And, as the ALJ correctly noted, the results of those mental status examinations were

---

[10] *See, e.g.*, AR at 416, 446, 466, 552, 571, 1181-82, 1190-91, 1194-95, 1202-03, 1215-16, 1219-20, 1234, 1247, 1250, 1261, 1342, 1430-31, 1434-35, 1439, 1443-44, 1447-48, 1453, 1457-58, 1477, 1484-85 (mental status examinations and psychological findings in the exhibits cited by the ALJ).

largely within normal limits, specifically in the areas of memory, intellect, thought process, judgment, insight, motor skills, speech, and concentration. *Id.* at 20. The ALJ also correctly noted Plaintiff was routinely found to be alert and oriented in all spheres, cooperative, and independently performing activities of daily living. *See id.* Although Plaintiff catalogs her providers' notes regarding her ongoing depression, anxiety, and PTSD-related symptoms in the record that might support a finding of greater limitations, if the evidence "supports more than one rational interpretation," this Court "must defer" to the ALJ's decision. *Batson v. Comm'r*, 359 F.3d 1190, 1193 & n.1 (9th Cir. 2004); *accord Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1013 (9th Cir. 2003) ("The presence of contradictory reports does not preclude a finding that a claimant is not disabled.").

Plaintiff also complains the ALJ did not "discuss the evidence of mental impairment outside of the 'B' criteria" analysis (Op. Br. at 24), but on the Court's reading of the decision, that is exactly what the ALJ did. Directly following the Paragraph B analysis, the ALJ proceeded to determine Plaintiff's mental RFC. *See* AR at 21 ("The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph b' mental function analysis."). Again belying Plaintiff's allegations of cherry-picking, the ALJ cited mental status examinations and progress notes from Plaintiff's mental healthcare providers dated 2017, 2018, 2021, 2022 and 2023, the April 20, 2019 report of a psychiatrist's consultative examination, and the findings by state agency medical consultants on initial and reconsideration review. *See id.* (citing AR at 95-107, 110-120, 446, 466, 471, 619, 620, 1181-83, 1190-91, 1201-03, 1211-12, 1434-35, 1447-48, 1457, and 1476). The ALJ noted these records and medical opinions were consistent with his conclusion that Plaintiff had "at most mild limitation in the broad domains of functioning" addressed in the Paragraph B analysis. *Id.* As described by the ALJ, the medical evidence demonstrated Plaintiff's symptoms were "mostly stable with medication," had not significantly

worsened over the course of her treatment; Plaintiff continued to demonstrate alertness, average intelligence, and appropriate thought content despite external stressors and ongoing depression. *Id*. The ALJ noted this evidence supported his determination that Plaintiff had only mild limitations due to her mental impairments. *See id.*

Even if the ALJ did not discuss Plaintiff's non-severe mental impairments after step two, Plaintiff has not demonstrated such failure was harmful error. "An ALJ is required to discuss and evaluate evidence that supports his conclusion; he is not required to do so under any specific heading." *Scotellaro v. Colvin*, No. 2:13-CV-00696-GMN, 2015 WL 4275970, at *9 (D. Nev. June 22, 2015) (citing *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013)). Here, the ALJ thoroughly explained his step-two findings, and incorporated those findings by reference in his RFC analysis. *See id.* (finding under similar facts the ALJ considered claimant's mild mental limitation when determining his residual functional capacity).

The ALJ must "consider the limiting effects of all [a claimant's] impairment(s), even those that are not severe." 20 C.F.R. § 416.945(e). But consideration of the limiting effects of all impairments does not require the inclusion of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work. *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) (finding ALJ's decision not to include the plaintiff's non-severe impairment in RFC determination was proper because there was no evidence the impairment caused any functional limitations). Nor is the requirement that the ALJ consider Plaintiff's limitations the equivalent of a requirement that the ALJ exhaustively dissect all the evidence in the record. *See Hudnall v. Dudek*, -- F. 4th --, 2025 WL 729701, at *3 (9th Cir. Mar. 7, 2025) (noting "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision").

Moreover, Plaintiff has not identified other functional limitations the ALJ should have adopted, nor explained how incorporating any additional limitations based on her mental impairments – even if supported by the evidence – would have resulted in a different outcome. *See Burch*, 400 F.3d at 684 (finding no error at step five and noting plaintiff "ha[d] not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider"); *Campos v. Astrue*, 656 F. Supp. 2d 1179, 1186 (C.D. Cal. 2009) (finding no error where plaintiff "failed . . . to point to any evidence that she suffered from functional limitations due to [her impairment], let alone limitations which would have impacted the ALJ's analysis"). In fact, when the ALJ added mental and social limitations to his hypothetical during the 2023 Hearing, the vocational expert confirmed, "the jobs I provided for the prior hypotheticals would all still apply" and "it would not change the numbers." AR at 88-89. To the extent these mental and social limitations should have been included in the RFC, their omission was harmless. *See Molina*, 674 F.3d at 1115 ("[I]n each case we look at the record as a whole to determine whether the error alters the outcome of the case").

For the foregoing reasons, the Court finds Plaintiff has not met her burden to establish harmful error with respect to the ALJ's determination at step two of the sequential analysis.

## C. Substantial Evidence Supports the ALJ's Conclusions

Having found the ALJ's evaluation of Plaintiff's subjective testimony is free of harmful error, the Court turns to the question of whether the ALJ's conclusion is supported by substantial evidence. The Court has independently "assess[ed] the entire record, weighing the evidence both supporting and detracting from the [ALJ's] conclusion." *See Ahearn*, 988 F.3d at 1115. Based on this review, the Court finds substantial evidence supports the ALJ's decision, as summarized below.

The record confirms Plaintiff suffers from osteoarthritis in both knees and obesity, with frequent complaints of knee pain. *See*, *e.g.*, AR at 540, 588, 604, 609,

865, 1333, 1518.  Findings on physical examination demonstrated occasional edema and tenderness, but without deformity, full range of motion, and 5/5 strength with extension and flexion.  *Id*. at 658; 666, 672, 988, 1000, 1146, 1403.  Plaintiff's knee pain was treated with medication, cortisone injections, hyaluronic acid injections, knee braces, and physical therapy, which she reported provided some relief.  *Id*. at 543-45, 582-84, 658.  Plaintiff's treating providers considered knee replacement if "conservative management" failed, and Plaintiff was working toward losing weight to ready herself for surgery.  *Id*. at 659, 945, 981, 1012-14, 1324.  At a pre-operative evaluation in 2020, Plaintiff's "exercise capacity" was assessed at 4 METS, or the ability to climb a flight of stairs or walk uphill.  *Id*. at 1350.

Plaintiff also regularly consulted with her physicians and a dietician regarding her obesity and discussed the possibility of bariatric surgery with them.  AR at 555-56, 596-98, 606, 629, 654, 885, 946.  She also endorsed eating healthy and walking for 10 minutes several times a week.  *Id*. at 1303, 1312.  In early 2023, she was noted to be able to engage in a 45-minute exercise class and tolerated endurance, strengthening, stretching and mobility exercises "without incident."  *Id*. at 1544.  She also reported continuing her regular, daily walks.  *Id*. at 1554.

The record also confirms Plaintiff has been diagnosed with depression, anxiety and post-traumatic stress disorder resulting from witnessing her husband's suicide in 1995.  *See, e.g*, *id*. at 422, 430, 572, 682, 969, 1430.  Plaintiff's documented symptoms included depressed mood, poor sleep, nightmares and poor focus.  *See, e.g*., *id*. at 500, 647.  Notwithstanding these reported symptoms, and despite occasionally presenting as tearful, anxious, agitated or with a flat affect, findings on mental status examinations as to orientation, speech, memory, attention, fund of knowledge, judgment, insight and thought process were consistently within normal limits over a several-year period (2017 to 2023).  *Id*. at 446, 466, 532, 624, 879, 1181, 1219, 1261, 1430, 1477.  She was also noted to have a

"normal affect" or "okay mood" at several non-psychiatric healthcare visits. *See, e.g.*, *id*. at 552, 566, 658, 947, 965, 1309, 1342, 1548.

On initial review of Plaintiff's application, F. Kalmar, M.D. determined Plaintiff was physically capable of modified light work. AR at 105. Dr. Kalmar noted Plaintiff's BMI was 45.5 and that notwithstanding the findings of bilateral osteoarthritis of the knees, "neuro intact, strength 5/5 . . . no acute abnormality." *Id.* Regarding mental impairments, P. Solomon, Ph.D., determined Plaintiff had either no limitations or only mild limitations in all four Paragraph B criteria. *Id*. at 101-02. Dr. Solomon concluded Plaintiff's mental impairments were "n[on-]s[evere] per SSA standards," noting Plaintiff's mental status examinations were "largely intact." *Id.* at 102; *see also id.* at 103 (noting "MDI established for psych, but not at incapacitating level"). On reconsideration review, P. Caruso-Radin, Psy.D., affirmed Dr. Solomon's findings, stating "[o]verall, the evidence as a whole indicates the prior decision remains reasonable and based in the M[edical] E[vidence of] R[ecord]." *Id.* at 114. Dr. Kalmar's findings were affirmed on reconsideration review by B. Vaghaiwalla, M.D, based on his review of the medical evidence. *Id*. at 118.

On April 20, 2019, psychiatrist Gregory Nicholson, M.D., conducted a psychiatric consultative examination of Plaintiff. AR at 616-621. Plaintiff was noted to be tearful and depressed, but otherwise demonstrated average intelligence, normal speech, grossly intact insight, judgment, and fund of knowledge, and was "coherent and organized" in her thought processes. *Id*. at 618-19. Based on his examination, Dr. Nicholson diagnosed Plaintiff with anxiety disorder and major depressive disorder, both of which were expected to improve with treatment. *Id*. at 619-20.

On January 20, 2023, Phong Dao, D.O. conducted an internal medicine consultation. AR at 1395-1405. Based on this examination, Dr. Dao assessed Plaintiff with bilateral knee pain, obesity, depression, and a history of carpal

tunnel syndrome. *Id*. at 1404. Dr. Dao determined Plaintiff was capable of a reduced range of light work. *Id*. at 1404-05.

The Court finds the foregoing is relevant and substantial evidence adequate to support the conclusion that Plaintiff's mental impairments were non-severe, and the determination that Plaintiff had the residual functional capacity to perform a reduced range of light work as described in the ALJ's decision. As such, the ALJ's RFC and resulting determination that Plaintiff is not disabled within the meaning of the Act are adequately supported and will not be disturbed. *See Ahearn*, 988 F.3d at 1115 ("If substantial evidence in the record supports the ALJ's decision we must defer to the ALJ."); *see also* 42 U.S.C.A. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

## V.
## CONCLUSION

For the reasons stated above, the Court concludes the ALJ's decision is free of legal error and is supported by substantial evidence, and accordingly **AFFIRMS** the final decision of the Commissioner of Social Security. The Clerk of the Court shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED.**

Dated: March 19, 2025

Hon. David D. Leshner
United States Magistrate Judge